IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DONALD ANDREW BESS, JR., )<br>           Petitioner, )<br>)<br>v. )<br>)<br>LORIE DAVIS, Director, )<br>Texas Department of Criminal Justice, )<br>Correctional Institutions Division, )<br>)<br>           Respondent. ) | Civil Action No. 3:16-CV-1150-D<br><br>**THIS IS A CAPITAL CASE** |

## MOTION FOR DISCOVERY

Petitioner, Donald Andrew Bess, Jr., requests that this Court allow him to conduct discovery relating to his currently pending habeas corpus petition. Specifically, Petitioner asks that this Court allow him to conduct depositions of four prison officials who can provide evidence regarding his behavior while previously incarcerated, crucial evidence needed for resolution of his claim that trial counsel were ineffective for failing to present this testimony. Additionally, Petitioner requests that subpoenas be issued to resolve controverted, material facts regarding the reliability of the DNA evidence used to convict him at trial.

Counsel conferred with opposing counsel, W. Erich Dryden of the Texas Attorney General's Office. Mr. Dryden informed undersigned counsel that it is the position of the Texas Office of Attorney General to OPPOSE this Motion.

**I.    LEGAL AUTHORITY FOR DISCOVERY**

    **A. Discovery in Federal Habeas Corpus Proceedings**

Under Rule 6 of the Rules Governing Section 2254 Cases in The United States District Courts (hereafter "Habeas Rule 6(a)"), a court may order discovery under the Federal Rules of

1

Civil Procedure upon a showing of "good cause." Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (Rule 6(a) incorporates the Court's directive that a federal habeas corpus petitioner is "'entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts.'"); *see also Blackledge v. Allison*, 431 U.S. 63, 82–83 (1977); Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with *Harris v. Nelson*").

In *Bracy,* the petitioner raised a speculative claim of judicial bias based on the fact that the trial judge was subsequently convicted of receiving bribes in other matters. The Supreme Court unanimously reversed the lower courts' denial of discovery, even though the Court agreed with Bracy's argument that discovery in support of his claim was "speculative," *id.* at 909, "only a theory," and "not supported by any solid evidence." *Id.* at 908. Once a petitioner demonstrates "good cause" for discovery, "it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) (citation omitted).

In short, a petitioner who has (1) made specific allegations warranting relief, (2) shown why the requested information is essential to the adequate, factual development of his claims, and (3) demonstrated that the requested information is likely in the hands of the party or agency from whom discovery is sought and cannot be obtained through other means, has established "good cause" under *Bracy* and Rule 6. *See Murphy*, 205 F.3d at 813–14; *East v. Scott*, 55 F.3d 996, 1001 (5th Cir. 1995) (although a "district court generally has discretion to grant or deny

discovery requests under Rule 6, a court's blanket denial of discovery is an abuse of discretion if discovery is indispensable to a fair, rounded, development of the material facts") (quoting Commentary to Habeas Rule 6), *granting relief after discovery, East v. Johnson*, 123 F.3d 235 (5th Cir. 1997); *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995); *Toney v. Gammon*, 79 F.3d 693, 700 (8th Cir. 1996) (petitioner entitled to discovery of physical evidence to establish constitutional claims).

### B. Discovery Is Especially Warranted in a Capital Case

The policies favoring discovery are even stronger in capital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976); *McFarland, v. Scott,* 512 U.S. 849, 855 (1994). Because this is a death penalty case, broad discovery is necessary to ensure the extra measure of process which is demanded in capital cases. "[I]f death is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims." *Wilson v. Butler*, 825 F.2d 879, 883 (5th Cir. 1987). In fact, the capital petitioner who fails to request full discovery in his initial habeas petition may lose his life because he failed to investigate his case earlier. *Tucker v. Kemp*, 819 F.2d 978, 981 (11th Cir. 1987) (on eve of execution, court found abuse of the writ and denied relief where capital petitioner failed to seek discovery during first habeas proceeding). Given the gravity of this capital case, Bess requests this Court's leave to conduct discovery which will enable him to fully investigate, develop, and present any, and all, relevant constitutional claims for relief in his capital § 2254 petition.

## II.     DEPOSITIONS REQUESTED

The behavior of Petitioner and the question of future dangerousness were key issues at his capital sentencing. Under Texas state law, the prosecution must prove, beyond a reasonable doubt, that he continues to pose a risk to society. At Petitioner's trial, the prosecution introduced testimony from a number of prison officials. Trial counsel, through its investigative efforts, ascertained information from additional prison officials regarding Petitioner's display of non-violent, good prison behavior exhibited over decades of prior incarceration. Unfortunately, Petitioner's jury was deprived the opportunity to consider this rebuttal evidence because trial counsel neglected to elicit such evidence from prison guards testifying as state witnesses, and the trial court refused to admit their hearsay statements.

Based on the state court record, prison officials who would have spoken positively about Petitioner's behavior while incarcerated were never called as witnesses by the defense. Instead, trial counsel sought to admit the hearsay statements of five prison officials unsuccessfully. Trial counsel argues prison officials refused to cooperate with Petitioner's defense team unless met with a guarantee of not being called as testifying defense witnesses. (Vol. 51, Tp. 57–58). The Texas Court of Criminal Appeals rejected this argument, stating the defense still had subpoenaing power. *Bess v. State*, 2013 WL 827479, *36 (Tex. Crim. App. Mar. 6, 2013).

In his Petition for Habeas Corpus, Bess alleges his trial counsel were ineffective for failing to call prison officials who could have established, through persuasive testimony and evidence spanning more than three decades of incarceration, that Petitioner is not a future danger to society. Petitioner further contends state habeas counsel was ineffective for failing to raise this claim in state post-conviction proceedings.

Undersigned habeas counsel was able to interview and secure a statement from one of the five officials with a hearsay statement unsuccessfully introduced at trial. Mr. Johnny Mahone provided Petitioner a signed declaration affirming that not only did he not consider Bess a threat, on the contrary, Mahone identified Bess as a positive influence for other inmates. Further, Mahone's declaration asserted his willingness to testify at trial on behalf of the defense, had trial counsel simply asked. (ECF Doc. 23, PageID 1253–55).

Mahone's declaration recognizes the existence of positive information available to Petitioner that ineffective trial counsel failed to present. Mr. Mahone is one of no less than five prison officials willing at the time of trial, to provide constructive and supportive statements on behalf of Bess. The remaining four prison officials who should have been called as defense witnesses at trial are critical to Petitioner's habeas claim of ineffective counsel.

Danielle Mickenberg, employed by undersigned counsel as a mitigation specialist in this case, attempted to interview and obtain declarations from the four prison officials with hearsay statements denied as evidence at trial. Despite her diligent, repeated efforts, Ms. Mickenberg was unable to secure an interview with anyone other than Mr. Mahone. Given the unsuccessful results of habeas counsel's exercise of due of diligence in pursuing evidence of positive prison behavior established, but not put forth before the jury at the time of trial, Petitioner moves this Court to allow habeas counsel to conduct depositions of the prison officials in question. Petitioner requests that this Court to grant depositions as part of discovery, pursuant to Habeas Rule 6 and Federal Rules of Civil Procedure 30. Specifically, Petitioner requests depositions for the following prison officials or former prison officials:

       a. Cynthia Johnson
       b. Janet Ebner
       c. David Fransaw
       d. Chad Crippin

### III. SUBPOENAS REQUESTED

Petitioner also requests that this Court authorize the issuance of subpoenas pursuant to Habeas Rule 6 and Federal Rules of Civil Procedure 45. In his First Amended Petition, Bess raised a number of claims relating to the validity and reliability of DNA evidence presented at his trial. (ECF Doc. 23, PageID 723–27). The basis for these four claims revolved around the same set of facts prompted, in part, by notification from the Dallas County District Attorney's Office about issues with prior DNA testing. This subsequently led to the issuance of new DNA reports while Petitioner's federal proceedings were ongoing. (ECF Doc. 23, PageID 715, 719–20). As information pertaining to material, disputed facts regarding these claims is in the possession of state actors, Petitioner requests that subpoenas be issued for this information.

First, Petitioner requests that subpoenas be issued to provide information relevant to the independent DNA review conducted by Dr. Maher Noureddine. As part of that review, Dr. Noureddine received maintenance records from the Southwestern Institute of Forensic Sciences (SWIFS), the entity responsible for conducting DNA testing in this case. (ECF Doc. 23, PageID 1229–32). The maintenance record for one machine that SWIFS considered "critical-use equipment," specifically an AB 310-B capillary electrophoresis instrument (serial number 100001137), revealed the machine was not undergoing regular maintenance during the time DNA testing in this case occurred. (*Id.* at 1231.) In 2008, DNA testing in this case resulted in multiple malfunctions and unusable information that "were quite excessive," and could have been caused by the failure to conduct regular maintenance in this instrument. (*Id.*) Despite these maintenance records being provided in response to requests for records pertaining to DNA testing in this case, the Director asserts that Petitioner is unable to specifically identify whether the problematic machine was used for the 2008 testing in question. (ECF Doc. 30, PageID

1360). Petitioner agrees with the Director's assertion; because that information exists solely in the possession of state actors—specifically SWIFS—only the issuance of a subpoena can resolve this question. Petitioner also requests that a subpoena be issued to SWIFS for the preparation and expiration dates of the reagents used to run the 310 CE instrument regarding the testing in the instant case including, but not limited to, buffers, HiDi Formamide, and POP-4. (*Id.*)

Second, Petitioner requests that subpoenas be issued regarding the timing of when specific information was known to state actors regarding issues with DNA evidence in his case. In his First Amended Petition, Bess includes a claim that his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) were violated by the suppression of material, favorable evidence. (ECF Doc. 23, PageID 725–26). In her response, the Director asserted that the State "could not have suppressed evidence or knowingly presented false evidence when the evidence used to support those claims arose on postconviction review." (ECF Doc. 30, PageID 1361). When the State became aware of the DNA issues in Bess's case, as well as the maintenance issues with the equipment used at the time of trial, is unclear based on information currently available to Petitioner. As currently, it is information that exists solely in possession of state-actors, Petitioner seeks subpoenas to provide this information.

Based on the above, Petitioner requests, under Rule 45, the following subpoenas be issued:

a. To Southwestern Institute of Forensic Sciences, for any and all documentation, including but not limited to: all records, reports, emails, notes, writings, or other documentation, regarding whether the AB 310-B capillary electrophoresis instrument (serial number 100001137) was used to test DNA evidence in this case.

7

    b. To Southwestern Institute of Forensic Sciences, for any and all documentation, including but not limited to: all records, reports, emails, notes, writings, or other documentation, regarding whether the preparation and expiration dates of the reagents used to run the AB 310-B capillary electrophoresis instrument (serial number 100001137) in the instant case, including but not limited to buffers, HiDi Formamide, and POP-4.

    c. To Southwestern Institute of Forensic Sciences, for any and all documentation, including but not limited to: all records, reports, emails, notes, writings, or other documentation, regarding when the agency became aware of maintenance issues with the AB 310-B capillary electrophoresis instrument (serial number 100001137) in the instant case.

    d. To the Dallas County District Attorney's Office, for any and all documentation, including but not limited to: all records, reports, emails, notes, writings, or other documentation, regarding when it became aware of any potential errors or questions regarding the reliability and/or accuracy in Petitioner's case, as well as any documentation regarding when and how efforts to inform Petitioner's counsel of these issues.

## IV. CONCLUSION

For the reasons set forth in this Motion, and in accordance with the Amended Petition for Mr. Bess, Petitioner respectfully requests leave to conduct the aforementioned discovery, as good cause exists for granting discovery in this matter. In making this request, Petitioner maintains his right to seek additional discovery in the future, in the form of supplemental requests to access relevant documents and records, as well as to conduct the depositions of other

relevant witnesses that may be unearthed through the initial discovery process. Moreover, he reserves the right to right to request an evidentiary hearing in the future, pending the outcome of the litigation regarding discovery.

Respectfully submitted, this 6th day of December, 2018.


/s/Jonathan E. Broun
JONATHAN E. BROUN                    JASON D. HAWKINS
Senior Staff Attorney                Federal Public Defender
North Carolina Prisoner Legal Services   Federal Public Defenders Office
NC Bar No. 18108                     TX Bar No. 00795763
PO Box 25397                         525 Griffin St., Suite 629
Raleigh, NC 27611                    Dallas, TX  75202
(919) 856-2200                       (214) 767-2746
Jonathan.e.broun@gmail.com           Jason_Hawkins@fd.org


## Certificate of Service

I, Jonathan E. Broun, hereby certify that on the 6th day of December, 2018, a copy of the foregoing motion was delivered via ECF to the Texas Attorney General's Office, attention W. Erich Dryden at erich.dryden@oag.texas.gov.

/s/ Jonathan E. Broun
_____
**Jonathan E. Broun**
Attorney for Petitioner