# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DONALD ANDREW BESS § | |
| § | |
| v. § | CIVIL ACTION NO. 3:16-CV-1150-S |
| § | |
| LORIE DAVIS, Director TDCJ-CID § | |

## MEMORANDUM OPINION AND ORDER

On March 23, 2020, this Court issued a Memorandum Opinion and Order [ECF No. 65] and Judgment [ECF No. 66] denying Petitioner Donald Andrew Bess's ("Petitioner") Petition for Federal Habeas Corpus Relief. On April 20, 2020, Petitioner filed a Notice of Appeal [ECF No. 68] and Motion to Alter or Amend Judgment (the "Motion") [ECF No. 67] pursuant to Federal Rule of Civil Procedure 59(e). For the following reasons, the Court denies the Motion.[1]

### I.   LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a court to alter or amend a judgment, but it may not "be used to relitigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 n.5 (2008) (citation omitted); *Trevino v. City of Fort Worth*, 944 F.3d 567, 570 (5th Cir. 2019) ("It is not the 'proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.'" (quoting *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004))). "Rule 59(e) . . . allows a court to alter or amend a judgment to (1) accommodate an intervening change in controlling law, (2) account for newly discovered evidence, or (3) correct a manifest error of law or fact." *Trevino*, 944 F.3d at 570. "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used

---

[1] Petitioner asks the Court to delay its ruling on the Motion due to the Supreme Court's grant of certiorari in *Banister v. Davis*, 139 S. Ct. 2742 (2018). The Court, however, does not construe Petitioner's Motion as a successive federal habeas corpus petition, and therefore, *Banister* is inapposite to this case. Further delay in the disposition of this case is unnecessary.

sparingly." *Templet*, 367 F.3d at 479 (citing *Clancy v. Employers Health Ins.*, 101 F. Supp. 2d 463, 465 (E.D. La. 2000)).

## II. ANALYSIS

### A. *The AEDPA*

In the present case, Petitioner asserts that the Court committed manifest error by failing to apply the standard for habeas relief articulated in *Wilson v. Sellers*, 138 S. Ct. 1188 (2018). Petitioner is mistaken. It is binding Fifth Circuit law that the Antiterrorism and Effective Death Penalty Act ("AEDPA") authorizes a federal habeas court to review only a state court's decision and not the written opinion explaining that decision. *See Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2003) (en banc) (citing 28 U.S.C. § 2254(d)). More recently, the Fifth Circuit explained the scope of a federal habeas court's review of state court rulings denying a claim for relief on the merits:

> [W]hether the state court's decision involved an unreasonable application of Supreme Court precedent does not depend solely on the state habeas court's actual analysis. Section 2254(d) requires [the court] to "determine what arguments or theories supported or, . . . *could have supported*, the state court decision." [The court is] therefore tasked with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon.

*Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (third alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)), *cert. denied*, 139 S. Ct. 78 (2018). *Wilson*, and the standard articulated therein, is inapplicable to this proceeding. In *Wilson*, the Supreme Court addressed the Eleventh Circuit's refusal to adopt the "look through" principle—that is, a federal habeas court reviewing a state appellate court's silence on a federal constitutional claim should "look through" that court's silence to the last reasoned state court opinion addressing the claim in order to ascertain the appellate court's rationale for rejecting the federal constitutional claim. *See Wilson*, 138 S. Ct. at 1194. The Supreme Court expressly recognized that, unlike the Eleventh Circuit, the

2

Fifth Circuit has always applied this "look through" approach to ascertaining the reason for a state court's rejection of a federal constitutional claim. *See id.* (citing *Ellis v. Lynaugh*, 873 F.2d 830, 838 (5th Cir. 1989)). Petitioner's argument, therefore, is without merit.

Insofar as Petitioner argues that the Court violated *Wilson* by failing to delve into the minutiae of the opinion issued by the Texas Court of Criminal Appeals' ("TCCA") affirming Petitioner's conviction on direct appeal or the intricacies of the state habeas trial court's and TCCA's opinions and orders issued in the course of Petitioner's state habeas corpus proceeding, Petitioner misconstrues the nature of federal habeas review.

### (1)   *Purpose of the AEDPA*

First, even before the advent of the AEDPA's narrow scope of federal habeas review, it was clear that federal habeas relief does not exist for the purpose of correcting errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding complaints regarding the admission of evidence under California law did not present grounds for federal habeas relief absent a showing that admission of the evidence in question violated due process); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (recognizing that federal habeas relief will not issue for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding a federal court may not issue the writ on the basis of a perceived error of state law). In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *Estelle*, 502 U.S. at 67-68; *Lewis*, 497 U.S. at 780; *Pulley*, 465 U.S. at 41.

> When a federal district court reviews a state prisoner's habeas corpus petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is in custody in violation of the Constitution or laws or treaties of the United States. The court does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*.

*Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (citations omitted) (internal quotation marks omitted).

3

### (2) *Legislative History of the AEDPA*

Second, the legislative history of the AEDPA indicates that it was intended to limit the scope of federal habeas review, not to broaden the scope of review or to reconfigure federal habeas courts as super-state appellate courts. For example, one of the principal purposes of the AEDPA was to reduce delays in the execution of state and federal criminal sentences, especially capital sentences. *See Ryan v. Valencia Gonzales*, 568 U.S. 57, 76 (2013); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Another purpose of the AEDPA was to encourage litigants to pursue claims in state court prior to seeking federal collateral review. *See Duncan v. Walker*, 533 U.S. 167, 181 (2001); *see also Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (noting that the AEDPA "place[s] the burden on a petitioner to raise and litigate as fully as possible his potential federal claims in state court"). Thus, under the AEDPA, federal habeas review of claims is limited to the record that was before the state court that adjudicated the prisoner's claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "The AEDPA statute of limitation[s] promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Day v. McDonough*, 547 U.S. 198, 205-06 (2006) (quoting *Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000)). Collectively, the provisions of the AEDPA further the principles of comity, finality, and federalism. *See Panetti v. Quarterman*, 551 U.S. 930, 945 (2007); *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). Therefore, Petitioner's request that the Court second guess the state court opinions is neither mandated by the Supreme Court's holding in *Wilson* nor consistent with the legislative history of the AEDPA. *Cf. United States v. Guerrero*, 768 F.3d 351, 361 (5th Cir. 2014) (explaining that courts should not "read tea leaves to

predict possible future Supreme Court rulings, but only decide whether an issued Supreme Court decision has 'unequivocally' overruled . . . precedent").

### B. *De Novo Review*

This Court properly applied binding Fifth Circuit precedent when it rejected all of Petitioner's claims for relief in his federal habeas corpus petition on the merits because (1) the Court concluded after de novo review that Petitioner's federal constitutional claims possessed no arguable merit, (2) the state court's rejection on the merits of those same claims was consistent with clearly established federal law, and (3) Petitioner was not entitled to a Certificate of Appealability because his federal constitutional claims were all lacking in arguable merit.[2] *See generally* Op.

#### (1) *Dr. Vigen's Testimony*

While Petitioner faults the Court for analyzing legal authorities not cited by the state court in denying Petitioner's challenge to state trial court's evidentiary rulings regarding Dr. Mark Vigen's proffered hearsay testimony, *Wilson* "does not prohibit this Court from considering Supreme Court cases not cited [by the state court] when evaluating the reasonableness of the state court's reasoning." *Langley v. Prince*, 926 F.3d 145, 163 (5th Cir. 2019), *cert. denied*, 2020 WL 1906607 (Apr. 20, 2020). In the course of determining what constitutes "clearly established federal law" for purposes of Section 2254(d) review, a federal habeas court is not limited to

---

[2] For instance, the Court explained in its Memorandum Opinion and Order (the "Opinion") that the state trial court permitted Petitioner's mental health expert Dr. Mark Vigen to testify extensively regarding the contents of his conversations with various Texas Department of Criminal Justice ("TDCJ") employees who claimed to be ignorant of any acts of violence by Petitioner during his lengthy term of incarceration. *See* ECF No. 65 ("Op.") §§ I(D)(2), I(D)(4). While the state trial court forbid Dr. Vigen from quoting hearsay comments that were duplicitous of Dr. Vigen's testimony, the Court concluded that (1) the exclusion of this testimony did not violate Petitioner's federal constitutional rights because that evidentiary ruling did not render the punishment phase of Petitioner's capital murder trial fundamentally unfair and (2) any error in the exclusion of the hearsay testimony in question did not rise above the standard for harmless error recognized in *Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993) (the test for harmless error in federal court is "whether the error had a substantial and injurious effect or influence in determining the jury's verdict"). *See id.* at 48-52.

examining only the Supreme Court precedents identified by the state appellate court or state habeas court in its written opinions affirming the petitioner's conviction on direct appeal or denying state habeas corpus relief, respectively.[3] *Id.* There was no manifest error of law or fact in the Court's analysis of the state trial court's evidentiary ruling.

### (2) *Ineffective Assistance of Counsel Claims*

With regards to Petitioner's ineffective assistance of counsel claim, the Court reviewed de novo both prongs of the *Strickland* standard because Petitioner raised new factual theories and evidence supporting this claim, which were unexhausted. *See Nelson v. Davis*, 952 F.3d 651, 658 (5th Cir. 2020) ("'For claims that are not adjudicated on the merits in the state court, . . . we do not apply the deferential scheme laid out in § 2254(d) and instead apply a de novo standard of review.'" (quoting *Ward v. Stephens*, 777 F.3d 250, 256 (5th Cir. 2015)). Federal courts may deny writs of habeas corpus under Section 2254 by engaging in de novo review when it is unclear whether AEDPA deference applies. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *King v. Davis*, 883 F.3d 577, 585 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 413 (2018). After conducting de novo review, the Court concluded that all of Petitioner's complaints of ineffective assistance by his state trial counsel satisfied neither prong of the *Strickland* standard. *See* Op. at 65-115. Petitioner has not demonstrated that the Court made a "manifest error of law or fact" in denying his ineffective assistance of counsel claim. *Trevino*, 944 F.3d at 570.

---

[3] While one Fifth Circuit panel suggested that "[t]he continued viability of this approach after . . . *Wilson* . . . is uncertain," *Thomas v. Vannoy*, 898 F.3d 561, 568 (5th Cir. 2018), the Supreme Court denied petitions for writs of certiorari after *Wilson* in both *Evans v. Davis* and *Langley v. Prince*, which applied the same standard summarized above. To date, no opinion of the Supreme Court or Fifth Circuit had recognized that *Wilson v. Sellers* abrogated the Fifth Circuit rule announced in *Neal v. Puckett* and reaffirmed in *Evans v. Davis*. For the reasons discussed below, resolution of this question is unnecessary in this case because this Court rejected almost all of Petitioner's federal constitutional claims after de novo review of those claims.

6

### (3) *Remaining Claims*

Similarly, Petitioner has not demonstrated that the Court made a manifest error of law or fact as to any other section of the Opinion. *See* Op. § III (concluding that there was no legal authority mandating extension of the Eighth Amendment analysis in *Atkins* and *Roper* to Petitioner's complaints about his advanced age and ill health, and finding the claim foreclosed by *Teague*); *id.* § IV (concluding that there was no legal authority warranting federal habeas corpus relief premised upon preindictment delay resulting exclusively from investigatory delay); *id.* §§ V, VI (concluding that admission of Dr. Gilliland's expert testimony and exclusion of Dr. Vigen's hearsay testimony did not render the capital murder trial fundamentally unfair); *id.* § VII (concluding that Texas Court of Criminal Appeal's ("TCCA") rejection on the merits of Petitioner's *Batson* claim on direct appeal was wholly consistent with clearly established Supreme Court precedent);[4] *id.* § VIII (concluding after de novo review that Petitioner's actual innocence, *Brady*, and *Giglio/Napue* claims were all without arguable legal merit). At no point did the Court fail to "look through" to the relevant state court opinion rejecting a federal constitutional claim on the merits. Moreover, the Court conducted either express de novo review or de facto de novo review on Petitioner's federal constitutional claims and found all of them lacking in arguable legal merit. If Petitioner's federal constitutional claims are without arguable merit under a de novo standard of review, then his claims most certainly do not entitle him to federal habeas relief under the narrower AEDPA standard of review.

---

[4] In so holding the Court did not need to "look through" to any lower state court opinion addressing Petitioner's *Batson* claim. The highest state court with jurisdiction over the matter, i.e., the TCCA, addressed and rejected Petitioner's *Batson* claim on the merits in its opinion affirming Petitioner's conviction and sentence on direct appeal. For the reasons discussed in § VII of the Opinion, the TCCA's decision rejecting Petitioner's *Batson* claim on the merits was wholly consistent with clearly established federal law as enunciated by the Supreme Court's precedents. Thus, the Court's analysis of Petitioner's *Batson* claim did not violate the rule announced in *Wilson*.

### III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner's Motion to Alter or Amend Judgment.

**SO ORDERED.**

SIGNED April 28, 2020.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**